# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

NATIONSTAR MORTGAGE, LLC,

Plaintiff,

vs.

FALLS AT HIDDEN CANYON
HOMEOWNERS ASSOCIATION et al.,

Defendants.

2:15-cv-01287-RCJ-NJK

ORDER

This case arises from a residential foreclosure by the Falls at Hidden Canyon Homeowners Association ("the HOA") for failure to pay HOA fees. Pending before the Court are a Motion to Dismiss, (ECF No. 62), and two Motions for Summary Judgment, (ECF Nos. 64, 65). For the reasons given herein, the Court grants summary judgment for Plaintiff and denies the other motions.

I.    FACTS AND PROCEDURAL BACKGROUND

In October 2005, non-party Gwendolyn L. Farrow obtained a $256,500 mortgage loan to purchase property located at 1852 Fossil Butte Way, North Las Vegas, Nevada 89032 ("the Property"). Non-party The Bank of New York Mellon ("BNYM") acquired the note and Deed of Trust ("DOT") by Corporate Assignment of Deed of Trust recorded March 24, 2010.

On January 5, 2011, as a result of the homeowner's failure to pay HOA fees, the HOA recorded a lien for delinquent assessments. The HOA later recorded a notice of default and

election to sell on March 11, 2011, and a notice of trustee's sale on July 28, 2011. On April 8, 2011, BNYM requested, through its agent, a payoff ledger identifying the amount of the superpriority portion of the HOA's lien. The HOA refused to provide the ledger. On November 15, 2011, the HOA foreclosed on the Property, acquiring the Property itself for the sale price of $9,850. The HOA assigned the Property to Defendant Las Vegas Development Group, LLC ("LVDG") by quitclaim deed recorded November 23, 2011. LVDG then quitclaimed its interest in the Property to Defendant Airmotive Investments, LLC ("Airmotive"). Plaintiff Nationstar Mortgage, LLC ("Nationstar") alleges it later obtained its interest in the Property from BNYM by a Corporate Assignment of Deed of Trust recorded November 21, 2014.

On July 8, 2015, Nationstar brought this action for quiet title and declaratory judgment, violation of NRS 116.1113, wrongful foreclosure, and injunctive relief. On April 26, 2017, Nationstar filed a First Amended Complaint ("FAC"). Nationstar alleges that the HOA's foreclosure sale did not extinguish BYNM's interest in the Property, and therefore the title Nationstar acquired from BNYM following the foreclosure is superior to any interest held by any Defendant.

The HOA filed a motion to dismiss the FAC, which the Court granted. (Order, ECF No. 41.) Nationstar then filed its Second Amended Complaint, and the HOA moved to dismiss it. The Court granted that motion in part, finding that Nationstar had not alleged adequate facts to state a claim of wrongful foreclosure based on violations of the applicable CC&Rs. (Order 4–5, ECF No. 60.) However, the Court declined to dismiss Nationstar's quiet title claim. On October 27, 2017, Nationstar filed its Third Amended Complaint. (ECF No. 61.) The HOA moves again to dismiss. (Mot. Dismiss, ECF No. 62.) In addition, both the HOA and Nationstar have moved for summary judgment. (Mots. Summ. J., ECF Nos. 64, 65.)

///

## II. LEGAL STANDARDS

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court uses a burden-shifting scheme. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citation and internal quotation marks omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.

If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is

sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations unsupported by facts. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50. Notably, facts are only viewed in the light most favorable to the nonmoving party where there is a genuine dispute about those facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007). That is, even where the underlying claim contains a reasonableness test, where a party's evidence is so clearly contradicted by the record as a whole that no reasonable jury could believe it, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

### III. ANALYSIS

#### a. Quiet and Declaratory Relief

Nationstar moves for summary judgment primarily on the basis of *Bourne Valley Court Tr. v. Wells Fargo Bank, NA*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2296, 198 L. Ed. 2d 726 (2017). This Court has ruled that because *Bourne Valley* struck down NRS Chapter 116's "opt-in" notice scheme as facially unconstitutional, actual or reasonable notice is

inapposite. *See, e.g., Bank of N.Y. Mellon v. Ravenstar Invs., LLC*, No. 3:17-cv-116, 2017 WL 2588088, at *3–4 (D. Nev. June 14, 2017) (Jones, J.). The Court will therefore quiet title in favor of Nationstar under *Bourne Valley*.

Contrary to the arguments of LVDG and Airmotive, no decision of the Nevada Supreme Court relieves this Court of its obligation to follow *Bourne Valley*. It is true that the Nevada Supreme Court has held that the non-judicial foreclosure scheme of NRS Chapter 116 does not implicate state action under the Due Process Clauses of the United States and Nevada Constitutions. *See Saticoy Bay LLC Series 350 Durango 104 v. Wells Fargo Home Mortg., a Div. of Wells Fargo Bank, N.A.*, 388 P.3d 970, 975 (Nev. 2017). However, the Nevada Supreme Court's opinion is not binding on this Court with respect to the statute's constitutionality under the U.S. Constitution; on that question, the Court must adhere to Ninth Circuit precedent. *See Watson v. Estelle*, 886 F.2d 1093, 1095 (9th Cir. 1989) (stating that the decision of a state supreme court construing the U.S. Constitution is not binding on federal courts).

Furthermore, the Court disagrees with Defendants' conclusion that "the Supreme Court of Nevada [has] already construed NRS 116.3116 *et seq.* to require notice to the mortgage lenders." (Resp. 11, ECF No. 77.) This Court has interpreted the *SFR* decision to mean that NRS 107.090 did not require notice to the deed of trust holder in a Chapter 116 sale at the relevant time. *See U.S. Bank., N.A. v. SFR Invs. Pool 1, LLC*, 124 F. Supp. 3d 1063, 1078–80 (D. Nev. 2015) (Jones, J.) (examining *SFR Invs. Pool 1, LLC v. U.S. Bank, N.A.*, 334 P.3d 408, 411 (Nev. 2014)). Prior to the 2015 amendments to NRS Chapter 116, notice to a lienor of record required the lienor to have notified the HOA of the interest before the recordation of the NOD or mailing of the NOS. It is this "opt-in notice scheme" that led the Ninth Circuit to declare the statute facially unconstitutional. Judge Boulware has certified to the Nevada Supreme Court the question of whether the pre-October 1, 2015 version of NRS 116.31168(1) required notice to the

first deed of trust holder. Of course, if the answer were "yes," then the notice scheme would presumably not be facially unconstitutional, and the facts of notice in this case would have to be litigated. But a plain reading of the statutes and both the objective and subjective legislative intent behind the 2015 amendments lead to the inescapable conclusion that notice was not previously required. *See, e.g., Christiana Tr. v. K&P Homes*, No. 2:15-cv-1534, 2018 WL 456020, at *2–3 (D. Nev. Jan. 16, 2018) (Jones, J.).

The Court also rejects Defendants' contention that Nationstar lacks standing to challenge the effect of the HOA foreclosure sale. A quiet title action is simply a request for a court to declare the rights of the parties as to the title to a piece of real estate. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948). In Nevada, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, any person with a claimed interest in a property may bring a quiet title action to obtain a declaration that his title is superior to that of other interest holders, and may prove his claim by any valid legal theory. The fact that Nationstar did not own an interest in the Property at the time of the foreclosure sale is not dispositive in determining the validity and priority of the interest Nationstar presently claims. Indeed, because the foreclosure sale did not extinguish the DOT in this case, the title Nationstar acquired subsequent to the sale was and is superior to that of other interest holders.

Next, Defendants argue that the sale in this case is saved by Nevada's "return doctrine." That is, although the 1993 opt-in version of Chapter 116's notice scheme was ruled

first deed of trust holder. Of course, if the answer were "yes," then the notice scheme would presumably not be facially unconstitutional, and the facts of notice in this case would have to be litigated. But a plain reading of the statutes and both the objective and subjective legislative intent behind the 2015 amendments lead to the inescapable conclusion that notice was not previously required. *See, e.g., Christiana Tr. v. K&P Homes*, No. 2:15-cv-1534, 2018 WL 456020, at *2–3 (D. Nev. Jan. 16, 2018) (Jones, J.).

The Court also rejects Defendants' contention that Nationstar lacks standing to challenge the effect of the HOA foreclosure sale. A quiet title action is simply a request for a court to declare the rights of the parties as to the title to a piece of real estate. *See Kress v. Corey*, 189 P.2d 352, 364 (Nev. 1948). In Nevada, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, any person with a claimed interest in a property may bring a quiet title action to obtain a declaration that his title is superior to that of other interest holders, and may prove his claim by any valid legal theory. The fact that Nationstar did not own an interest in the Property at the time of the foreclosure sale is not dispositive in determining the validity and priority of the interest Nationstar presently claims. Indeed, because the foreclosure sale did not extinguish the DOT in this case, the title Nationstar acquired subsequent to the sale was and is superior to that of other interest holders.

Next, Defendants argue that the sale in this case is saved by Nevada's "return doctrine." That is, although the 1993 opt-in version of Chapter 116's notice scheme was ruled

unconstitutional in *Bourne Valley*, the previous version required the HOA to give notice without an opt-in requirement. *See* Nev. Rev. Stat. § 116.31168 (1991) ("The association must also give reasonable notice of its intent to foreclose to all holders of liens in the unit who are known to it."). Defendants assert that under the return doctrine, an unconstitutional statute reverts to its latest constitutional version, *see We the People Nev. ex rel. Angle v. Miller*, 192 P.3d 1166, 1176 (Nev. 2008), so the Court should assess the constitutionality of the HOA's sale in this case under the 1991 version of NRS 116.31168. The Court rejects these arguments for reasons given by another judge of this District. *See PNC Bank, N.A. v. Wingfield Springs Cmty. Ass'n*, No. 3:15-cv-349, 2017 WL 4172616, at *3 (D. Nev. Sept. 20, 2017) (Du, J.).

Upon even closer examination, the Court is convinced that the 1991 version of NRS 116.31168 is also insufficient under the Due Process Clause. First, the previous statute only required notice of the "intent to foreclose," Nev. Rev. Stat. § 116.31168 (1991), e.g., via a notice of default and election to sell. The Due Process Clause, however, requires "[n]otice by mail or other means as certain to ensure actual notice" of the "proceeding which will adversely affect the liberty or property interests of any party," e.g., via a notice of sale. *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) ("[A] mortgagee's knowledge of delinquency in the payment of taxes is not equivalent to notice that a tax sale is pending."). Second, the Due Process Clause requires notice not only to those lienholders "who are known," Nev. Rev. Stat. § 116.31168 (1991), but to all lienholders whose "name[s] and address[es] are reasonably ascertainable." *Mennonite Bd. of Missions*, 462 U.S. at 800. Because the 1991 version of NRS 116.31168 permitted foreclosure without reasonable notice of the time and place of sale to all lienholders whose identities and addresses were reasonably ascertainable, but only notice of the bare intent to foreclose to those lienholders who were already known, the return doctrine cannot validate the foreclosure here even assuming the doctrine applies precisely as Defendants argue it does.

Lastly, the Court declines to conduct the severability analysis requested by Defendants. In *Bourne Valley*, the Ninth Circuit struck down the opt-in notice provisions of Chapter 116 as facially unconstitutional, giving no guidance as to specific "offending" words that must be severed, or other words that must be saved. This Court has held that the proper interpretation of the *Bourne Valley* opinion is that any foreclosure under Chapter 116 while the opt-in notice provisions were in effect could not have extinguished the first deed of trust, regardless of the notice actually given. *See Bank of New York Mellon v. Ravenstar Investments, LLC*, No. 3:17-cv-116, 2017 WL 2588088, at *3–4 (D. Nev. June 14, 2017) (Jones, J.). Recently, the Ninth Circuit issued a memorandum opinion exhibiting the same understanding of *Bourne Valley*'s import. *7912 Limbwood Court Tr. v. Wells Fargo Bank, N.A.*, 707 F. App'x 479, 480 (9th Cir. 2017) (citations omitted) ("In [*Bourne Valley*], this Court held the Statute to be facially unconstitutional. That successful challenge means that the law has no force or effect. Therefore, the Statute could not operate to extinguish the first deed of trust.").

### b. Wrongful Foreclosure

In its prayer for relief, Nationstar requests primarily a declaration that Defendants acquired the Property subject to the DOT. The other relief requested is phrased in the alternative. Therefore, because the Court grants summary judgment for Nationstar on its quiet title claim, Nationstar has received the relief it requested. Accordingly, the Court dismisses the wrongful foreclosure claim as moot.

/ / /

/ / /

/ / /

/ / /

/ / /

## CONCLUSION

IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 62) is DENIED.

IT IS FURTHER ORDERED that the HOA's Motion for Summary Judgment (ECF No. 64) is DENIED.

IT IS FURTHER ORDERED that Nationstar's Motion for Summary Judgment (ECF No. 65) is GRANTED. Nationstar shall submit a proposed form of judgment within fourteen days of this order.

IT IS SO ORDERED. *March 27, 2018.*

_____
ROBERT C. JONES
United States District Judge