UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| NATIONSTAR MORTGAGE LLC, | Case No.: 2:15-cv-01287-RCJ-NJK |
| Plaintiff, | |
| vs. | Order |
| FALLS AT HIDDEN CANYON HOMEOWNERS ASSOCIATION, *et al.*, | |
| Defendants. | |

This case arises from a non-judicial foreclosure under NRS 116.3116. Plaintiff seeks quiet title to have this Court rule that its deed of trust survived the foreclosure against the property's current owners, or alternatively, seeks damages against the foreclosing HOA for wrongful foreclosure. Plaintiff moves for summary judgment on both of its claims, and the HOA moves for summary judgment on the wrongful foreclosure claim. (ECF Nos. 105, 106.) The Court finds that offering tender would have been futile, and therefore grants Plaintiff's motion for summary judgment. As this moots Plaintiff's alternative claim for wrongful foreclosure, the Court grants the HOA's motion for summary judgment and closes the case.

**FACTUAL BACKGROUND**

In October 2005, non-party Gwendolyn Farlow refinanced ownership of the real property commonly known as 1852 Fossil Butte Way, North Las Vegas, Nevada by way of a loan in the

amount of $256,500 secured by a deed of trust through non-party Bank of America, N.A. (BANA). (ECF No. 105 Ex. A.) In 2014, the deed of trust was assigned to Plaintiff. (ECF No. 105 Ex. B.)

In January 2011, Defendant Falls at Hidden Canyon Homeowners Association (the Falls), through its trustee, Defendant Absolute Collection Services, LLC (ACS), recorded a notice of delinquent assessment lien against the property. (ECF No. 105 Ex. C.) In March 2011, the Falls, through ACS, recorded a notice default against the property. (ECF No. 105 Ex. D.) In July 2011, the Falls, through ACS, recorded a notice of sale against the property. (ECF No. 105 Ex. E.) None of these notices identified the superpriority portion of the lien. (ECF No. 105 Exs. C–E.)

In April 2011, BANA's counsel Miles Bauer Bergstrom & Winters, LLP (Miles Bauer) sent ACS a letter requesting the superpriority portion of the Falls's lien and offering to pay that amount in full. (ECF No. 105 Ex. F at NSM000222–31.) In this letter, Miles Bauer wrote:

> It is unclear, based upon the information known to date, what amount the nine months' of [sic] common assessments pre-dating the NOD actually are. That amount, whatever it is, is the amount BAC should be required to rightfully pay to fully discharge its obligations to the HOA per NRS 116.3102 and my client hereby offers to pay that sum upon presentation of adequate proof of the same by the HOA.

(*Id.* at NSM000227.) ACS declined to provide this information by which BANA could properly deduce the superpriority amount and instead wrote back:

> I am making you aware that it is our view that without the action of foreclosure, a 9 month Statement of Account is not valid. At this time, I respectfully request that you submit the Trustees Deed Upon Sale showing your client's possession of the property and the date that it occurred. At that time, we will provide a 9 month super priority lien Statement of Account.

(*Id.* at NSM000231.)

ACS had frequently provided identical responses to Miles Bauer when he sought to know the superpriority amount from ACS. (ECF No. 105 Ex. G.) Mr. Rock Jung, an attorney for Miles Bauer, testified in another proceeding that he had attempted to acquire the superpriority amount from ACS as HOA trustee "several hundred times." (ECF No. 105 Ex. H at NSM001842–43.) He

testified that it was the practice of ACS to refuse to provide the superpriority amount or the information by which that amount could be calculated from approximately 2009 to 2013. (*Id.* at NSM001843.) Beginning sometime in approximately 2013, ACS began to provide nine months' worth of assessments, so the superpriority amount could be calculated. (*Id.*) Whenever ACS would provide sufficient information by which the superpriority amount could be calculated, it was Miles Bauer practice to deliver a cashier's check to ACS with a letter stating that the check would satisfy the superpriority amount. (*Id.* at NSM001847.) ACS always refused to accept these payments and proceeded with foreclosures. (*See* ECF No. 105 Ex. I at NSM000687–88 (deposition of ACS's 30(b)(6) witness in Case No. 2:16-cv-02764) ("Q: Okay. So . . . if the bank had submitted payment to ACS for an amount less than the entire amount of the HOA lien, for instance, for only nine months of assessments and on the check included a notation that it was paid in full, that would be rejected by ACS? A: It would."); ECF No. 105 Ex. J at NSM000953 (deposition of ACS's 30(b)(6) witness in Case No. 2:16-cv-00475); ECF No. 105 Ex. K at NSM001214–15 (deposition of ACS's 30(b)(6) witness in Case No. 2:16-cv-00524).) ACS's practice was based on a misinterpretation of the Nevada statutes, which governed the superpriority amount—that the superpriority lien did not exist unless and until the deed of trust holder foreclosed. (*See* ECF No. 105 Ex. H (trial testimony of ACS manager, Kelly Mitchell in Case No. A-13-693205-C in Clark County District Court) ("[ACS's counsel's] belief was that the super priority didn't exist without foreclosure, and, therefore, any statement that we provided, since Miles Bauer put payment in full in their letters and payment in full on their checks, that it wouldn't be a valid statement.").)

In November 2011, the Falls, through ACS foreclosed on the Property and purchased it for itself for $9,850. (ECF No. 105 Ex. M.) The Falls then transferred the property to Las Vegas Development Group, LLC (LVDG) through quitclaim deed. (ECF No. 105 Ex. O.) LVDG transferred the property to Airmotive in January 2017. (ECF No. 105 Ex. P.)

## LEGAL STANDARD

A court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only facts that affect the outcome are material. *Id.*

To determine when summary judgment is appropriate, courts use a burden-shifting analysis. On the one hand, if the party seeking summary judgment would bear the burden of proof at trial, then he can only satisfy his burden by presenting evidence that proves every element of his claim such that no reasonable juror could find otherwise assuming the evidence went uncontroverted. *Id.* at 252. On the other hand, when the party seeking summary judgment would not bear the burden of proof at trial, he satisfies his burden by demonstrating that the other party failed to establish an essential element of the claim or by presenting evidence that negates such an element. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (Brennan J., concurring). A court should deny summary judgement if either the moving party fails to meet his initial burden or, if after he meets that burden, the other party establishes a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## ANALYSIS

Plaintiff contends providing the superpriority amount would have been futile because ACS had a common practice of refusing offers for less than the full lien amount. The Court agrees and grants summary judgment in favor of Plaintiff.[1]

///

---

[1] As the Court finds for Plaintiff on the issue of futility, it does not address Plaintiff's alternative arguments of obstruction, equitable considerations, or due process.

Under Nevada law, the general rule is that "a promise to make a payment at a later date or once a certain condition has been satisfied cannot constitute a valid tender"—there must be an actual attempt to pay the amount due. *7510 Perla Del Mar Ave. Tr. v. Bank of Am., N.A.*, 458 P.3d 348, 350 (Nev. 2020) (en banc). However, there is an exception to this rule when formal offer of tender would be "futile" because the evidence shows the debtee would have refused the offer. *Id.* at 351–52. Thus, in the current context of non-judicial foreclosure, a debtor that proves futility "preserve[s] its interest in the property such that [the purchaser at foreclosure] purchased the property subject to [the debtor's] first deed of trust." *Id.* at 352.

Plaintiff argues that had it provided ACS with a tender offer with the condition that the superpriority amount was paid in full, ACS would have rejected tender. The Court agrees. In this case, BANA, through its agent, Miles Bauer, inquired about the superpriority amount in this case and offered to pay that amount, but ACS refused to provide this figure. (ECF No. 105 Ex. F.) Furthermore, in other cases, ACS frequently refused to accept payments of the superpriority amount based on a misunderstanding on how the amount was calculated and admitted that this was its common business practice. (*See* ECF No. 105 Ex. H at NSM 001784–85; ECF No. 105 Ex. I at NSM000687–88; ECF No. 105 Ex. J at NSM000953; ECF No. 105 Ex. K at NSM001214–15.) Based on this overwhelming evidence, the Court is thus satisfied that ACS would have rejected any offer from Plaintiff or its predecessor in interest to pay the full superpriority amount, which contained the condition that it paid off that portion of the lien.

Defendants claim that ACS was not required to accept a tender offer that included a condition that the superpriority was "paid in full" and point to testimony from Ms. Mitchell where she states that ACS would have accepted checks from Miles Bauer if that language was not there. (ECF No. 105 Ex. H at NSM001785.) The fact that BANA's tender payments included the condition that the superpriority amount was fully paid is inconsequential as the Nevada Supreme

1  Court has explicitly held that "valid tender must be unconditional, or with conditions on which the
2  tendering party has a right to insist," so "[a]lthough [the plaintiff's] tender included a condition
3  [that the HOA would find the plaintiff's obligations paid in full], *it had a [legal] right to insist on*
4  *the condition*," *SFR*, 427 P.3d at 118 (emphasis added). Defendants' argument amounts to the
5  absurd contention that a tender payment would have been accepted only if were not considered
6  legal tender.

7      The Court therefore finds that an offer to pay the superpriority portion of the Falls's lien
8  on the property would have been futile. It therefore holds that Defendants acquired the Property
9  subject to Plaintiff's senior deed of trust. The Falls also moved for summary judgment on the claim
10 of wrongful foreclosure. In its response, Plaintiff stated that it "has no objection to the court
11 dismissing its claims against the Falls if it finds the deed of trust survived the sale." (ECF No. 110
12 at 1.) The Court therefore grants this motion as well and closes the case.

## CONCLUSION

14     IT IS HEREBY ORDERED that Motion for Summary Judgment (ECF No. 105) is
15 GRANTED.

16     IT IS FURTHER ORDERED that Motion for Summary Judgment (ECF No. 106) is
17 GRANTED.

18     IT IS FURTHER ORDERED that Plaintiff's deed of trust survived the foreclosure sale and
19 that Defendants Airmotive Investments, LLC and Las Vegas Development Group, LLC obtained
20 their interests in the property commonly known as "1852 Fossil Butte Way, North Las Vegas,
21 Nevada" subject to Plaintiff's first deed of trust.

22 ///
23 ///
24 ///

IT IS FURTHER ORDERED that the Clerk of the Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated March 4, 2021.

_____
ROBERT C. JONES
United States District Judge